**Lindsey EUBANK, Appellant,**

v.

**FIRST NATIONAL BANK OF BELLVILLE, Appellee.**

**No. 13–90–456–CV.**

Court of Appeals of Texas, Corpus Christi.

June 27, 1991.

Rehearing Overruled Aug. 29, 1991.

Thomas White, Corpus Christi, for appellant.

L. Timothy Perrin, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Lindsey Eubank appeals the trial court's granting of summary judgment in favor of appellee, First National Bank of Bellville (the Bank). By his sole point of error, Lindsey asserts that the trial court erred in granting the summary judgment. We affirm.

The Bank filed suit against Lindsey and Michael Eubank to collect the past-due amounts on a promissory note which Segundo Corporation, Inc. (Segundo) executed on May 27, 1988, and which Lindsey and Michael subsequently guaranteed. By the terms of the note, Segundo promised to pay

$62,306.45, plus interest on or before October 25, 1988. On August 25, 1988, Michael executed and delivered to the Bank a Loan Guaranty Agreement guaranteeing all Segundo's debts, liabilities and obligations. On October 25, 1988, Segundo defaulted by failing and refusing to repay the note. On October 27, 1988, Lindsey executed and delivered to the Bank a Loan Guaranty Agreement guaranteeing the same. Lindsey and Michael subsequently failed to honor their obligations under the guaranty agreements. The Bank sought payment of the $62,306.45 principal and over $11,457.55 in interest alleging that, because of the guaranty agreements, both Lindsey and Michael were individually liable for the amount of the note.

At the hearing on the motion for summary judgment, the trial court ruled in favor of the Bank, ordering that it recover a total of $84,822.00 owed jointly and severally by Michael and Lindsey. Only Lindsey appeals. By his sole point of error, Lindsey asserts that the evidence presented in his affidavit in response to the Bank's motion for summary judgment raises a fact issue regarding fraud in the inducement of his execution of the guaranty agreement and that he was not personally liable under the agreement.

 The purpose of a summary judgment is to eliminate patently unmeritorious claims or untenable defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972); *Barrow v. Jack's Catfish Inn*, 641 S.W.2d 624, 625 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). A summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988); *Flores v. H.E. Butt Stores, Inc.*, 791 S.W.2d 160, 162 (Tex.App.—Corpus Christi 1990, writ denied); *R.I.O. Syss., Inc. v. Union Carbide Corp.*, 780 S.W.2d 489, 490 (Tex.App.—Corpus Christi 1989, writ denied); Tex.R.Civ.P. 166a(c).

The party seeking summary judgment has the burden of proof, and all doubts regarding the existence of a genuine issue of fact are to be resolved against the movant. Accordingly, all evidence favorable to the non-movant will be accepted as true, and every reasonable inference must be indulged in favor of the non-movant and any doubts be resolved in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Rath v. State*, 788 S.W.2d 48, 50 (Tex.App.—Corpus Christi 1990, writ denied); *R.I.O. Syss.*, 780 S.W.2d at 490.

The Bank's summary judgment evidence consists of copies of the promissory note, the guaranty agreement signed by Michael, the guaranty agreement signed by Lindsey, and the demand letter sent to Lindsey and Michael by the Bank's counsel, and affidavits from Lance Granberry, the Bank's executive vice-president, and Russell Manning, the Bank's legal counsel. Manning's affidavit sets forth a list of the legal services rendered the Bank in this matter and the cost of those services. Granberry's affidavit states that he personally dealt with Lindsey and Michael in the execution of the guaranties. The affidavit details the notes' basic provisions and states that Segundo failed and refused to make payment on the note on October 25, 1988, the due date. Granberry was present two days later, on October 27, 1988, when Lindsey executed the guaranty agreement in question. Granberry states that he told Lindsey that he [Lindsey] was signing the guaranty in his individual capacity to guarantee Segundo's obligation under the note. While Lindsey was present and to clarify the fact that a guaranty agreement secures or guarantees the obligation of another, Granberry wrote the word "INDIVIDUALLY" under the signature line on the guaranty document.

The Loan Guaranty Agreement executed by Lindsey states, in pertinent part:

> For Value Received and to enable Segundo Corp. Inc. of Sinton, Texas, hereinafter designated as "Debtor," to obtain credit, from time to time, of First National Bank of Bellville, **we hereby request said Creditor to extend to said Debtor such credit as said Creditor may deem proper, and we hereby jointly and sev-**

erally guarantee the full and prompt payment to Creditor at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities, and obligations of every nature and kind of said Debtor to said Creditor.... [emphasis added]

This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal representatives and assigns of the undersigned, and each of them, respectively, and shall inure to the benefit of said Creditor, its successors, legal representatives and assigns.

Signed and Sealed by the undersigned, at Bellville, Texas this October 27th day of, 1988.

> *Lindsey Eubank* [signature]
> Secretary–Treasurer [handwritten]
> Segundo Corp., Individually [handwritten]

■ Lindsey filed a personal affidavit in response to the Bank's motion for summary judgment. The affidavit states that Lindsey did not sign the guaranty in an individual capacity; rather, he executed the document at the request of Granberry, then a Bank executive and the person with whom Segundo dealt when negotiating its loan. Lindsey agreed to sign the guaranty only for the corporation, but not in an individual capacity. He states that he never gave Granberry or anyone else permission, authority or instructions to write "individually" or any other words indicating his individual responsibility for the note on the guaranty agreement or any other instrument. He also states that it was his "understanding" with Granberry and the Bank that he would not be individually responsible or liable for the note and that the note was wrongfully altered to include "Individually" after he signed the guaranty agreement.

■ Lindsey's affidavit fails to raise an issue of material fact regarding irregularities in the execution of the guaranty agreement. A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform. *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 114 (Tex.1978); *Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex.App.—Dallas 1990, no writ). By definition, it is an undertaking by a third person to another to answer for the payment of a debt, incurred by a named person, in the event that the named person fails to pay. *Dann*, 788 S.W.2d at 183–84; *Pittinger v. Southwestern Paper Co.*, 151 S.W.2d 922, 924 (Tex. Civ.App.—Fort Worth 1941, no writ). In other words, by creating a secondary obligation to the creditor, the third person guarantees the performance of a primary obligation created by another. *Dann*, 788 S.W.2d at 183–84; *see also Republic Nat'l*, 578 S.W.2d at 114.

■ Under normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the only party liable under it. *Dann*, 788 S.W.2d at 184; *American Petrofina Co. v. Bryan*, 519 S.W.2d 484, 487 (Tex.Civ. App.—El Paso 1975, no writ). To circumvent this result, the corporate designations appearing after signatures on documents of this type are considered only to be *descriptio personae*, that is, the use of a word or phrase to identify or point out the person intended and not as an intimation that the language in connection with which it occurs is to apply to him only in the technical character which might appear to be indicated by the word. *See American Petrofina*, 519 S.W.2d at 487; *Neeley v. Intercity Management Corp.*, 623 S.W.2d 942, 948 (Tex.App.—Houston [1st Dist.] 1981, no writ).

■ In the instant case, the primary obligation created between Segundo and the Bank was guaranteed by the secondary obligation undertaken by Lindsey. The language of the guaranty agreement clearly establishes Segundo as the borrower, the Bank as creditor, and "the undersigned" as guarantor, in his personal capacity and not as a Segundo representative. Furthermore, Lindsey executed the guaranty two days *after* the due date of the note. To treat Segundo as the guarantor as well as

the borrower would negate the purpose of the guaranty. *See Dann,* 788 S.W.2d at 184 (citing *Kordick v. Merchant's Nat'l Bank & Trust Co.,* 496 N.E.2d 119, 124 (Ind.App.1986) (It would be meaningless for the corporation to guarantee its own debt because it would add nothing to the existing obligations) and *Roy v. Davidson Equip., Inc.,* 423 So.2d 496, 497 (Fla.App. 1982) (For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless.)) Thus, the words "Secretary–Treasurer, Segundo Corp." beneath Lindsey's signature was merely identification, *descriptio personae,* and not intended to apply in a technical character. *See Dann,* 788 S.W.2d at 184; *Neeley,* 623 S.W.2d at 948; *American Petrofina,* 519 S.W.2d at 487.

■■■■ Furthermore, Lindsey's subjective belief of the purpose of the guaranty agreement cannot contradict the intent of the parties expressed within the four corners of the document. *See Nautical Landings Marina, Inc. v. First Nat'l Bank,* 791 S.W.2d 293, 298 (Tex.App.—Corpus Christi 1990, writ denied); *Walker v. Horine,* 695 S.W.2d 572, 577 (Tex.App.—Corpus Christi 1985, no writ). Absent inquiry, a creditor is under no obligation to disclose information to a guarantor about that which the guarantor may be presumed to have knowledge. *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.,* 646 F.2d 1064, 1073 (5th Cir.1981); *Nautical Landings,* 791 S.W.2d at 298. Absent fraud, one is presumed to know the contents of a document and has an obligation to protect themselves by reading documents before signing them. *Nautical Landings,* 791 S.W.2d at 298; *see also G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 393 (Tex.1982); *overruled on other grounds, Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987). Here, as indicated by the plain meaning of the terms of the "Loan Guaranty Agreement," Lindsey's signature accepted the personal responsibility of paying Segundo's debt obligations should it default. Therefore, Lindsey's assertion that he did not intend to be personally bound by the guaranty is incorrect.

■■■■ Finally, although Lindsey asserts facts in support of an affirmative defense of fraud in the inducement of the guaranty agreement, his appeal fails because he did not plead fraud as a defense and failed to allege sufficient facts containing all the elements of fraud. *See R.I.O. Syss.,* 780 S.W.2d at 492; Tex.R.Civ.P. 94. A non-movant who intends to raise an affirmative defense to defeat a movant's entitlement to summary judgment has the burden to expressly present that defense to the movant and the trial court by written answer or other response. *See Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Shank, Irwin, Conant & Williamson v. Durant, Mankoff, Davis, Wolens & Francis,* 748 S.W.2d 494, 498 (Tex.App.—Dallas 1988, no writ); *Troth v. Dallas,* 667 S.W.2d 152, 155 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Rule 166a(c) of the Texas Rules of Civil Procedure states, in pertinent part:

> The judgment sought shall be rendered forthwith if [the summary judgment evidence shows that] there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law on the issue expressly set out in the motion or in an answer or any other response. **If the issue is not expressly presented to the trial court by written motion, answer, or other response, it shall not be considered on appeal as grounds for reversal.** (emphasis added)

Additionally, as in this case, a fact issue is not expressly presented by an affidavit filed in opposition to a motion for summary judgment, even though the affidavit may state information that would raise a fact issue regarding an affirmative defense, if the answer or written response fails to point out the fact issue raised by the affidavit. *Holmes v. Dallas Int'l Bank,* 718 S.W.2d 59, 60 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *accord Cottrell v. Carrillon Assoc., Ltd.,* 646 S.W.2d 491, 493 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

■■■■ Summary judgment evidence must raise a fact issue on each of the elements of fraud to be accepted as a valid

affirmative defense. *Khalaf v. United Business Inv., Inc.,* 615 S.W.2d 869, 871 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605, 611 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). In the present case, although there is evidence that Granberry requested that Lindsey sign the guaranty agreement, no evidence shows that he misrepresented the capacity in which Lindsey would be liable should he execute it. Lindsey's "understanding" that he would not be personally liable on the note does not show that Granberry knowingly made any misrepresentation to induce Lindsey to execute the guaranty. Lindsey's affidavit fails to assert facts that would satisfy raising a fact issue for any of the elements of fraud.

The Bank's summary judgment proof and its affidavit are clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies. Tex. R.Civ.P. 166a(c). If untrue, they were readily controvertible. Thus, the affidavit and documents were sufficient to show that Lindsey signed the guaranty agreement in his individual capacity to guarantee payment of Segundo's corporate debt. Point one is overruled.

The trial court's judgment is AFFIRMED.