George F. WOLFE, Appellant,

v.

William SCHUSTER, Appellee.

No. 20072.

Court of Civil Appeals of Texas, Dallas.

Nov. 21, 1979.

Rehearing Denied Jan. 4, 1980.

Robert Harms Bliss, Bliss & Hughes, Dallas, for appellant.

Jay M. Goltz, Dallas, for appellee.

Before GUITTARD, C. J., and CARVER and STOREY, JJ.

GUITTARD, Chief Justice.

In this declaratory judgment action, we must determine whether a justiciable controversy exists. If it does, we must construe the provisions of a promissory note allowing certain offsets against the note. This provision is alleged to be equivalent to a guaranty of the collection of sums payable to the maker from a third party as lessee under a commercial lease. The trial court dismissed the suit for lack of a justiciable controversy. We find that a justiciable controversy exists, and we agree that the provision in question is equivalent to a guaranty of collection, allowing such offsets only in the event that the maker fails to collect such amounts from the lessee after using reasonable diligence. Accordingly, we remand for trial of that issue.

*Facts*

Both parties moved for summary judgment, and both parties complain of the trial court's refusal to render a declaratory judgment based on the undisputed facts shown by affidavits attached to the respective motions. The note in question was signed by plaintiff George Wolfe in favor of defendant William Schuster as part of the consideration for the purchase of a tract of land. The note is referred to as a "wrap-around note," since the land is subject to a prior note and deed of trust to First Continental Bank, and the note in question provides for credits to the extent of payments by Wolfe on the prior note. As long as these payments are made, no additional payments are required on the wrap-around note, but after all payments are made to the bank on its note, additional payments on the wrap-around note will be due.

The summary-judgment proof further shows that when Schuster conveyed the property to Wolfe, he also assigned to Wolfe the lessor's interest in a lease on the property, which was then occupied by ITCO of Texas, Inc., as lessee. With reference to this lease, the wrap-around note provides the following:

> As further consideration for this note, *Payee guarantees the collection of all amounts to become due and payable to ITCO of Texas, Inc. pursuant to that certain lease agreement* between it as Lessee and William John Schuster as Lessor dated August 15, 1974. *In the event full collection of such amounts due are not made thereunder, then the amounts uncollected shall be applied to the amounts due hereunder after the payment in full of the aforementioned note to First Continental Bank.* Such application of amounts due by the holder hereof shall constitute performance in full of *this guarantee* and neither the Payee nor the holder hereof shall be personally liable therefor. [Emphasis added.]

Wolfe states in his affidavit that he had made all payments due to the bank each

month as they fell due, but that ITCO had defaulted on its lease and had made no rental payments since December 1976. As a result of this default, Wolfe states that he canceled the lease, evicted ITCO from the premises, and took possession. He avers also that he had paid out certain moneys for insurance, taxes, and repairs on the property, for all of which ITCO was bound by the lease to reimburse him, but had failed to do so. He states further that all of these delinquent rents and other sums due to him under the lease, if applied to the balance of the wrap-around note after payment in full of the prior note to the bank, would pay the wrap-around note in full. Wolfe says that he has made demand on Schuster to sign a release of the wrap-around note and of the deed of trust securing it, but that Schuster has failed to do so, even though, on full payment of the note to the bank, the deed of trust would secure no further obligation of Schuster to Wolfe. Accordingly, Wolfe prays for a judgment declaring that on payment of the balance on the note to the bank, he will have no further obligation to Schuster on the wrap-around note, and that the note and deed of trust be declared void on such payment.

Defendant Schuster resisted Wolfe's motion on the ground that Wolfe failed to exercise reasonable diligence in the collection of the payments due under the lease, and that by reason of such lack of diligence, Schuster is entitled to discharge from his guaranty and to have judgment that the wrap-around note and the deed of trust securing it are valid and in full force and effect.

### Justiciable Controversy

We must first consider whether the trial court properly dismissed the action for lack of a justiciable controversy. The judgment recites the trial judge's opinion that neither motion may be sustained because the suit requires the court to speculate about the future. Apparently, the judge took the view that so long as payments are still due

to the bank on the prior note, the question of offsets on the wrap-around note under the terms of the guaranty may never become material.

 We do not find the controversy to be merely hypothetical. Wolfe's right to offsets on the wrap-around note, if it exists, is a substantial present right. The amount of the indebtedness subject to Schuster's deed of trust is a material fact affecting the amount a purchaser would pay for the property. Schuster's denial of this right establishes the "ripening seeds" of an actual controversy which, in our opinion, gives the court jurisdiction to render a declaratory judgment. *See Gray v. Bush,* 430 S.W.2d 258, 263 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.); 1 W. Anderson, Actions for Declaratory Judgments § 14, at 60 (2d ed. 1961). The fact that the parties' rights will not mature until occurrence of a future event does not negate the existence of a justiciable controversy if present resolution of the issue will have immediately significant legal and financial consequences. *See Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855, 858 (Tex.1979).

### Nature of the Offset

Having found that jurisdiction exists to declare the parties' rights, we must next determine whether Wolfe's motion for summary judgment should have been sustained. Wolfe argues that the offset provision in the note states the conditions on which the offsets are to be applied, and, since those conditions have occurred, namely, failure of ITCO to pay the rent and make the other payments provided by the lease, he has no duty to use reasonable diligence to collect, but is entitled to the offset as a matter of law. Wolfe denies that the offset provision is a technical guaranty because, he argues, it expressly excludes personal liability on the part of Schuster and limits the offset to amounts which would otherwise be due to Schuster on the wrap-around note.

On the other hand, Schuster contends that notwithstanding the exclusion of per-

sonal liability, the offset provision is by its express terms a guaranty of collection and that such a guaranty, unlike a guaranty of payment, implies a requirement of reasonable diligence to collect the amounts due from the lessee before the offset can be applied. Schuster argues that his own affidavit establishes a lack of such diligence, in that it states that after he had been notified by Wolfe's agent of ITCO's default he had requested Wolfe to bring suit to enforce the landlord's lien, but that Wolfe had not done so, and neither had Wolfe given written authority, as requested, to bring such a suit, although ITCO had on the premises machinery and equipment with a reasonable market value in excess of $200,-000, subject to liens for not more than thirty percent of its value.

■ We agree with Schuster's interpretation of the note. Since the note is a formal legal document, apparently prepared by a lawyer, the technical legal phrases are presumed to have been used in their technical sense. *See, e. g., Morriss v. First Nat'l Bank,* 249 S.W.2d 269, 275 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.); *Fleming v. Todd,* 42 S.W.2d 123, 127 (Tex.Civ.App.—Beaumont 1931, writ dism'd). In law there is a well recognized distinction between a guaranty of collection and guaranty of payment. The difference is that a guaranty of collection is regarded as an undertaking of the guarantor to pay if the debt cannot be collected by the use of reasonable diligence, whereas a guaranty of payment is an obligation to pay the debt when due if the debtor does not. *Evans v. Bell,* 45 Tex. 553, 555 (1876); *Austin v. Guaranty State Bank,* 300 S.W. 129 (Tex.Civ.App.—Austin 1927, no writ); *Texas City Imp. Co. v. Griswold,* 41 S.W. 513 (Tex.

Civ.App.1897, writ ref'd); 38 C.J.S., Guaranty § 7, at 1140, 1141. This distinction has recently been recognized by the Supreme Court of Texas in *Universal Metals and Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877–78 (Tex.1976), and it has been embodied in the Uniform Commercial Code, Tex.Bus. & Com.Code Ann. § 3.416(a), (b) (Vernon 1968).[1]

■ By the express language of the provision in question, the payee "guarantees the collection of all amounts to become due" under the lease in question and agrees that the "amounts uncollected" shall be applied to the amounts due under the note "[i]n the event full collection of such amounts due are not made." This language, in our opinion, is typically that of a guaranty of collection, and it reasonably implies that a diligent effort to collect the amount due must be made before Wolfe is entitled to offset the uncollected amounts on his obligation to Schuster. The language chosen indicates that the parties intended all the incidents of a guaranty of collection to the extent of the offsets provided.

The interpretation proposed by Wolfe would lead to such extraordinary results that we cannot suppose that reasonable persons would have intended it. If ITCO's failure to pay, without more, establishes the offset, then Wolfe has no interest in collecting any amount from ITCO until the full amount of the offset is exhausted. Moreover, under Wolfe's interpretation, it is to Wolfe's advantage to cancel ITCO's lease so that he can lease the premises to another lessee whose payments would not prevent continuing offsets of the amounts not paid by ITCO. In fact, Wolfe states in his affidavit that he did cancel the lease, though he does not say whether he has procured an-

---

1. The Code section cited provides as follows:
 (a) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.
 (b) "Collection guaranteed" or equivalent words added to a signature mean that the sign-

er engages that if the instrument is not paid when due he will pay it according to its tenor, but only after the holder has reduced his claim against the maker or acceptor to judgment and execution has been returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him.

other lessee. The lease, which is included in the summary-judgment proof, provides that in case of default by the lessee, the lease may be forfeited at the lessor's discretion, and the lease may then come to an end as if the term had expired (presumably with no further liability for rent), or the lessor may re-enter and relet the premises for the account of the lessee, who is bound to make good any deficiency. Wolfe takes the position that he had no duty to Schuster, and, consequently, in the event of default, he could and did cancel the lease so as to extinguish any further liability of the lessee, but he insists, nevertheless, that he can enforce Schuster's guaranty for any remaining rent unpaid to the extent of the payments remaining on the wrap-around note after satisfaction of the prior note to the bank. Since the language of the note does not expressly require such result, we cannot reasonably suppose that the parties so intended.

■ Neither can we agree with Wolfe that the exclusion of any personal liability on Schuster's guaranty excuses Wolfe from any duty to use reasonable diligence to collect the payments guaranteed. Since the note requires installment payments from Wolfe to Schuster, it would have been futile to require Schuster to pay Wolfe the amounts guaranteed, and then to require Wolfe to pay the same amounts back to Schuster as installments on the note. The wrap-around note, as well as the prior note to the bank, excludes personal liability and limits the holder's remedy to enforcing the lien against the land. It was reasonable, therefore to provide for a guaranty of collection of the amounts due under the lease, but to limit liability on the guaranty to the amount of the installments due to Schuster on the note. That limitation has no other logical bearing on the terms of the guaranty provided in the note.

### Schuster's Defense

■ For the above reasons, we hold that the trial court could not properly have sus-

tained Wolfe's motion for summary judgment and that we cannot properly sustain it here. Neither, however, can we sustain Schuster's motion. Although we agree with Schuster that his liability on the guaranty for offsets on the note extends only to such payments as Wolfe could not collect from ITCO by reasonable diligence, we cannot say whether by such diligence any amount could have been collected. Neither can we determine from the record whether by any lack of diligence there has been such an impairment of collateral or of the right to subrogation as to discharge the guarantor under section 3.606, Tex.Bus. & Com. Code Ann. (Vernon 1968). Schuster says he does not know of any action by Wolfe to enforce the collection of the sums due under the lease, but that statement does not establish that no such action was taken or that it would have been successful if it had been taken. Consequently, we remand the case to the trial court so that Schuster may establish his defenses if he can.

### Schuster's Plea of Nonjoinder

■ Finally, we must deal with Schuster's contention that the trial court should have sustained his plea in abatement because of nonjoinder of ITCO. Schuster insists that this suit is, in effect, a suit on a guaranty of collection, and, consequently, that ITCO is a necessary party under articles 1986 and 1987, Tex.Rev.Civ.Stat.Ann. (Vernon 1979) and Rule 31 of the Texas Rules of Civil Procedure. Articles 1986 and 1987 require a creditor to bring suit and recover judgment against the principal obligor before he can have judgment against a guarantor unless he shows that the principal is insolvent or cannot be served with process. Rule 31 requires joinder of the principal obligor in a suit against a surety. These requirements have been held not to apply to the absolute obligation of a guaranty of payment of a negotiable instrument because of the provisions of section 3.416(a) of the Uniform Commercial Code, Tex.Bus. & Com.Code Ann. § 3.416(a) (Vernon 1968). *See Ferguson v. McCarrell*, 588 S.W.2d 895 (Tex.1979); *Hopkins v. First Nat'l Bank*, 551 S.W.2d 343, 345 (Tex.1977). Different considerations apply, however, to a guaran-

ty of collection. If subdivision (a) of section 3.416 is effective to dispense with the requirement of a suit against the principal in the case of a guaranty of payment, then by the same reasoning, subdivision (b) of the same section is effective to require such a suit in the case of a guaranty of collection, since it provides that "[c]ollection guaranteed" or equivalent words mean that the signer engages that he will pay the instrument "only after the holder has reduced his claim against the maker or acceptor to judgment and execution is returned unsatisfied, or after the maker or acceptor has become insolvent or it is otherwise apparent that it is useless to proceed against him." Although the lease in question may not be an "instrument" within the Code, the same result follows under articles 1986 and 1987 and Rule 31. In any event, it is clear that section 3.416(b) leaves the requirement of article 1986 concerning a judgment against the principal unimpaired in the case of a guaranty of collection.[2]

Accordingly, we hold that the plea in abatement should be sustained unless Wolfe pleads and proves facts that bring the case within the exceptions provided in the statutes and in the rule. Although this suit is in the form of a suit for declaratory judgment, it is in effect a suit to enforce Schuster's guaranty by establishing offsets to Wolfe's obligation to Schuster. No offsets are allowable against the note unless the conditions of the guaranty are satisfied. *See First Nat'l Bank v. De-Morse*, 26 S.W. 417, 418–19 (Tex.Civ.App.—1894, no writ). If such offsets are estab-lished, the judgment in this case will bar any future attempt by Schuster to enforce the note according to its terms. The provision that no personal judgment can be recovered against Schuster is immaterial, since, as above pointed out, the parties chose language indicating that they intended all the incidents of a guaranty to the extent of the offset provided. Consequently, a suit to enforce the guaranty to that extent requires joinder of the principal debtor unless nonjoinder is excused for the reasons stated in rule 31 and articles 1986 and 1987.

Reversed and remanded.

---

2. If the provision in question is a guaranty, then articles 1986 and 1987 are applicable, whether the guaranty is absolute or conditional, according to the holding of the Supreme Court in *Wood v. Canfield Paper Co.*, 117 Tex. 399, 5 S.W.2d 748, 750 (1928). The authority of *Wood* is questionable, however, in view of the recent decision of the Supreme Court in *Ferguson v. McCarrell*, 588 S.W.2d 895 (Tex. 1979), in which the court disapproved *Cook v. Citizens Nat'l Bank*, 538 S.W.2d 460 (Tex.Civ. App.—Beaumont 1976, no writ), which followed *Wood*.

Perhaps *Ferguson* can be reconciled with *Wood* on the theory that section 3.416(a) of the Code applies only to suits on negotiable instruments, leaving articles 1986 and 1987 unimpaired with respect to guaranties of other obligations, although such a distinction might have no rational basis otherwise. On that basis the *Wood* holding would control here, since the ITCO lease is not a negotiable instrument. Moreover, the Supreme Court may not have intended to overrule *Wood*, but only to disapprove *Cook* because of its holding that a guarantor cannot effectively waive the requirement in article 1986 of a judgment against the principal obligor as a condition of the guarantor's liability, a point not before the Supreme Court in *Wood*. Under that interpretation, also, *Wood* would control here because the present guaranty contains no express waiver of a judgment against ITCO as a condition of the offsets provided.